BERLIN *v*. RAINWATER.

Opinion delivered May 16, 1927.

1. EVIDENCE—STOCK BOOKS OF BANK CORPORATION.—The record of the stock of a bank corporation, required by Crawford & Moses' Digest, § 686, and by Acts 1923, p. 531, § 16, to be kept and to contain transfers, constitutes the best evidence as to who were stockholders in such bank.

2. EVIDENCE—ASSESSMENT ON BANK STOCK BY COMMISSIONER—CERTIFIED COPY.—In an action by a bank commissioner against the executor of a deceased stockholder to recover an assessment on his stock, a certified copy of the assessment was admissible under Crawford & Moses' Dig., § 667.

3. EXECUTORS AND ADMINISTRATORS — EXHIBITING CLAIM AGAINST ESTATE.—A complaint by the State Bank Commissioner, under Crawford & Moses' Dig., § 702, against the executor of a deceased stockholder to recover an assessment on bank stock should not be dismissed for noncompliance with §§ 97, 100 and 101, relative to exhibiting claims against estates, as such action is not a demand based upon a contract or tort, but is a statutory liability.

4. EXECUTORS AND ADMINISTRATORS — PERSONAL LIABILITY. — The executor of a deceased stockholder of a bank would not be liable under Crawford & Moses' Dig., § 702, for the amount of an assessment against stock in a suit by the State Bank Commissioner, unless he had property or funds in his hands with which to pay the judgment.

Appeal from Jefferson Circuit Court; *T. G. Parham,* Judge; affirmed.

*Jones & Hooker,* for appellant.

*Bridges & McGaughey,* for appellee.

MEHAFFY, J. The plaintiff, who is the appellee here, is successor as State Bank Commissioner to Charles McKee, who, on the 5th day of September, 1925, filed in the Jefferson Circuit Court the following complaint:

"The plaintiff, Charles McKee, State Bank Commissioner in charge of the affairs of the Citizens' Bank of Pine Bluff, Arkansas, for cause of action against the defendant states:

"That the said State Bank Commissioner, on the 5th day of January, 1925, took charge of the affairs of the Citizens' Bank of Pine Bluff, Arkansas, under and as provided by the laws of said State of Arkansas; and, as provided by the laws of said State, he, on the 7th day of January, 1925, made an assessment against the stockholders of said bank to the amount of one hundred per cent. of their respective holdings of the capital stock therein; that the defendant, Dave Berlin, as executor of the will of Meyer Berlin, deceased, at said times owned and held capital stock of said bank to the amount of $550; that said stock to the amount of $550 was owned and held by Meyer Berlin, who died on January 5, 1924; that the defendant, Dave Berlin, was by the probate court of Jefferson County, Arkansas, on the 24th day of Janu-

ary, 1924, duly appointed executor of the will of said Meyer Berlin, deceased, and is now the duly qualified and acting executor of such estate; that said amount of $550 has been demanded of him on account of the indebtedness herein stated, but he has failed to pay same.

"Wherefore plaintiff prays judgment against said Dave Berlin, as executor of the will of Meyer Berlin, deceased, in the sum of $550, with interest from January 7, 1925, until paid, and all costs herein expended, and for all other relief."

The appellant, defendant below, filed the following answer: "Comes the defendant, Dave Berlin, as executor of the will of Meyer Berlin, deceased, and for answer to the complaint of plaintiff herein, admits that he is the executor of the will of Meyer Berlin, deceased, as alleged in plaintiff's complaint, but he denied that, as such executor, he holds capital stock of the Citizens' Bank of Pine Bluff to the amount of $550, nd denies that the said Meyer Berlin held such stock at the time of his death. He denies that any demand has been made upon him as such executor, by the plaintiff, as State Bank Commissioner, to pay said assessment, and denies that the said Bank Commissioner is entitled to collect from the estate of the said Meyer Berlin any sum whatever by reason of any stock so alleged to have been owned or held by the said Meyer Berlin at the time of his death. Having fully answered, defendant prays to be dismissed with his reasonable costs."

The defendant also filed the following motion to nonsuit plaintiff: "Comes Dave Berlin, as executor of the will of Meyer Berlin, deceased, and moves the court to dismiss the complaint of plaintiff, Loid Rainwater, filed against him as executor of the will of Meyer Berlin, and for cause states that said demand has not been verified as required by §§ 101, 102, 103 and 104 of Crawford & Moses' Digest of the Statutes of Arkansas. And this defendant moves to dismiss said complaint because of such failure, as provided by § 104 of said Crawford & Moses' Digest of the Statutes of Arkansas; that defendant

have his costs herein expended, and all other and further relief.''

There was a judgment for the plaintiff. Defendant filed motion for new trial, which was overruled, and appeal was prayed to the Supreme Court. The defendant was given time to file bill of exceptions, which he filed within the time.

The plaintiff introduced the assessment, showing that the capital stock was assessed $300,000, or, rather, an assessment of that amount was made against the shareholders. The assessment was made on January 5, 1925. Notice of said assessment was also introduced. Said assessment was to be paid on or before January 8, 1925.

It was agreed by counsel that Dave Berlin is the executor of Meyer Berlin, deceased, and is duly qualified as the executor of the will of Meyer Berlin, deceased, qualified January 24, 1924, and has continuously been and acted as such executor since that time.

R. L. Byrd testified, in substance, that on the 5th day of January, 1925, and prior thereto, he was in the employ of the Citizens' Bank of Pine Bluff, in the note department, and assistant cashier, and he was familiar with the stock books in the bank, and that he would recognize them. He stated that the books he held in his hand were the stock records of the Citizens' Bank of Pine Bluff as regularly kept at the close of business. That it showed certificate No. 351, issued to Meyer Berlin November 17, 1921, and his receipt, November 17, 1921, signed by Meyer Berlin. That there were 22 shares of the stock, of the par value of $25 per share; showed that, after the stock had been delivered to Meyer Berlin, it had not been transferred; that, so far as the record showed, there had never been any transfer made. The Meyer Berlin to whom this stock was issued and who signed the receipt died about January, 1924; was familiar with Meyer Berlin's signature, and stated that the signature on the receipt for the stock on the record book was that of

Meyer Berlin. It is the same Meyer Berlin of whose estate Dave Berlin is executor. The date of the certificate is November 17, 1921, and receipt was issued the same day. The record of transfers of stock was kept by Mr. H. B. Strange, cashier. Witness said he did not keep them; that they might have been transferred upon the record of the county court in the county clerk's office, so far as witness knew; that all he knew was the record which he had before him, and which he did not keep; that the book was kept by Mr. Strange, and the record was in Mr. Strange's handwriting, as far as he could tell; that the record which he had in his hands is simply the stock certificate book, and that they also keep a record or stock ledger, which shows any transfer of stocks. Mr. Strange had charge of it, and kept all records about which he had been testifying, and that they were in his custody until the failure of the bank. Since that time it has been in the hands of the Bank Commissioner. It was turned over about the 8th of January. The record passed into the hands of the present Bank Commissioner August 8, 1925. The bank failed in January, 1925.

Witness testified that he had been in the Bank Commissioner's employ since January 5, 1925; that he was employed by Mr. Majors a few days after the bank failed. That he was pretty familiar with the records of the Citizens' Bank, and there are no other records relative to keeping and transferring stocks except the one he has. Immediately after the closing of the bank, while he was still in the employ of the bank, he became in the employ of the State Bank Commissioner, and had access to the books by virtue of his employment. Books had been kept in charge of the deputy bank commissioner, who had charge of the Citizens' Bank. He has had access to them all that time. There are no other records in the hands of the State Bank Commissioner or his deputies relative to the stock. That his duties in the office of the Bank Commissioner were keeping the books.

Mr. H. F. Grigsby testified in substance as follows: That he was deputy bank commissioner in charge of the

affairs of the Citizens' Bank, and that he became such August 8, 1925; that he had charge of the records and affairs of the bank since. He has stock certificate ledger and ledger of the issuance of stock certificates kept by the bank, as continuously shown from transfer to transfer. The record shows whom these stocks were with at the time of the failure. Meyer Berlin was a stockholder at that time, the holder of certificate No. 351, which was 22 shares of the stock at the par value of $25 each. There is no record of any transfer since this transfer was issued. An assessment was made on it, but no portion of it has been paid. There is an assessment against the stock of the par value of $550, and it remains unpaid.

Witness stated that he had been testifying from the stock certificate ledger of the Citizens' Bank of Pine Bluff. The stub of the actual transaction, certificate 351, 22 shares of stock issued in the name of Meyer Berlin, November 17, 1921, signed on the line, Meyer Berlin, canceled certificate 335, the new one issued, 351. No. 335 is the certificate from which 351 was issued. That he has read the stub. Record shows certificate 335 is canceled, which was drawn in the name of H. B. Byrd for 270 shares. Out of this 270 shares, 22 shares were transferred to Meyer Berlin. He said that he was just testifying what the record shows. The date of the certificate to Byrd was April 7, 1921. Witness stated that he became deputy bank commissioner August 8, 1925. The transaction that he had testified about occurred a considerable time before he became deputy bank commissioner; that none of them was in his handwriting; that he knew nothing about them at all except as they appeared in the records of the Citizens' Bank as it came into his hands. He has stock-book in his possession as deputy bank commissioner. This record shows the stock belongs to Meyer Berlin.

R. L. Byrd, being recalled, testified in substance that the book he had in his hand was the stock ledger of the Citizens' Bank. That it was regularly kept to the close of the business while the Citizens' Bank was in

business.   That it was in the hands of H. B. Strange, who was the cashier.   He is now somewhere in Florida.   This is the same Meyer Berlin that witness testified about, who died in January, 1924, and Dave Berlin was appointed executor.   Witness stated that the records he has testified about are the only ones kept by the bank relative to stock issued and transferred.   Witness did not keep those records.

Dave Berlin testified in substance that he was the executor of the estate of Meyer Berlin, who was the owner of considerable real estate in Pine Bluff.   He doesn't remember how much personal property; doesn't remember what the valuation was when he paid the inheritance tax.   Whatever the record shows, that is it.   He had more than $10,000 at the time of his death, above his liabilities.   There was more than $2,000 in Dave Berlin's hands January 7, 1925.   Witness does not remember how much property or money he got out of the estate.   He gave it to his sister, and did not get anything; gave everything to the sister.   It was admitted that the deed from Dolly Adelburg and Dave Berlin to Bessie Berlin was after September 5, after the summons was served in this case.   The property that was conveyed after the service of the summons was worth more than $2,500.

At the close of the evidence the court rendered judgment for the amount sued for.

Appellant's first contention is that the court erred in admitting testimony which, in the form presented, was claimed to be secondary, not the best evidence.

We cannot agree with counsel in this contention. The witness sufficiently identifies the books of the bank, and these are not only required to be kept, but the statute provides that the stock of every bank shall be deemed personal property, and, in case of sale, shall be transferred only on the books of such corporations in such form as the Commissioner shall prescribe.   The act of 1923 amended some sections and repealed others, but it did not repeal the above section, which is § 686 of Craw-

ford & Moses' Digest. But in act 627 of the Acts of 1923 it is expressly provided: "The stock of every such corporation shall be deemed personal property and be transferred only on the books of such corporations in such form as the directors may prescribe."

Where a record of the acts and proceedings of a private corporation is required by law to be kept, and even where such a record is actually kept, although not required by law, such record constitutes the best evidence of its contents, and parol evidence is not admissible if the record is accessible.

"Dyke Brothers, a partnership composed of two brothers of that name, were recorded as being owners of 11 shares of stock. Their contention is that certificates had never been issued to them, and that they were not in fact stockholders. We are of the opinion, however, that there is enough evidence to establish the fact that they were stockholders, and, that being true, there is no effort to show that that relation was severed prior to the default of the bank in regard to the public funds. The list of stockholders certified by the secretary of the corporation, on file in the clerk's office, is competent evidence to show who were the stockholders and is *prima facie* evidence of that fact. * * * Mr. Weir was certified on the list heretofore referred to as the holder of 3 shares of stock. He testified that he subscribed to the shares of stock and gave a check in payment of the amount, but the shares were never actually delivered to him. The evidence was, we think, sufficient to establish the fact that he was in fact a stockholder." *Bank of Midland* v. *Harris,* 114 Ark. 344, 170 S. W. 67, Ann. Cas. 1916B, 1255.

"No transfer of such stock will secure it from attachment until it is entered upon the books of the corporation, showing the names of the parties, the number of shares, and the date of the transfer. * * * The plaintiffs undertook to show that the transfer to the defendant was so entered upon the books of the People's Bank. For this purpose they offered the deposition of

Sumner Percival, the cashier, not taken upon written interrogatories, in which he testified that he made the transfer on the books of the bank. The defendant objected to the admission of this portion of the deposition, contending that the only proper evidence would be the books. But the presiding judge admitted it, and ruled that it was legal evidence of transfer without the production of the books, sufficient for the consideration of the jury. The record of the transfer could not thus be properly proved by parol testimony. The verbal statement of the cashier was inadmissible, and, if it was incumbent on the plaintiffs to prove that the transfer was recorded on the books of the bank in order to maintain their action, a new trial must be granted.   *   *   *
A transfer of bank stock is not thus valid until recorded. Until that is done, a creditor may attach it without alleging or proving fraud." *Scowhegan Bank* v. *Cutler*, 49 Maine 315.

In speaking of books and records of private corporations as evidence, it is said:

"Again, such records are received in evidence generally to prove corporate acts of the corporation, such as the list of its stockholders, its by-laws, the formal proceedings of its board of directors, and its financial conditions when its solvency comes in question." 10 R. C. L. 1169.

R. L. Byrd testified that he was assistant cashier of the bank, familiar with its stock-books so that he would recognize the books, and the book he had in his hand was a stock record of the Citizens' Bank of Pine Bluff, as regularly kept at the close of the business, and then testified about the record showing Meyer Berlin to be a stockholder. Also stated that he had seen the book time and again, and he knew it to be the stock certificate book. He not only testified that the record showed that this stock was issued to Mr. Berlin and Mr. Berlin had given his receipt for it, but there was no record that it had ever been transferred.

There is no controversy in this case about the books being properly kept, and Mr. Byrd testified that they were regularly kept, and that they showed Berlin to be a stockholder, and did not show any transfer of any such stock, and, in addition to that, the undisputed proof showed that Berlin himself signed a receipt for the stock. The certified copy of the assessment was properly introduced. Crawford & Moses' Digest, § 667.

The next contention of appellant is that the complaint should have been dismissed because there had been no compliance with § 100 of Crawford & Moses' Digest, providing how a claim or demand should be exhibited against an estate, and § 101, which provides that the claimant shall also append to his demand an affidavit, etc. Section 100 provides any person may exhibit his claim against any estate as follows: "If the demand be founded upon judgment, note or written contract by delivering to the executor or administrator a copy of such instrument with the assignment and credits thereon, if any, exhibiting the original, and, if the demand be founded on an account, by delivering a copy thereof, setting forth each item distinctly and the credits thereon."

It has been said by this court that "the term 'demand' is comprehensive, and includes all claims capable of assertion against the estates of deceased persons, whether arising out of contract or tort, and whether the suit to establish the same is begun by ordinary action or in the probate court." *Haden* v. *Haden,* 105 Ark. 95, 150 S. W. 415.

The cause of action in this case, however, does not arise out of contract or tort, but the cause of action is purely statutory. Moreover, this is not a claim against the estate of Meyer Berlin, deceased, in the sense of the statute providing for filing claims against the estates of deceased persons. The statute creating this liability provides: "That persons holding stock as executor, administrator, guardian or trustee shall not be personally liable as stockholders, but the estates and funds in their

hands shall be liable in like manner and to the same extent as the testator, intestate, ward or person interested in such trust fund would be if living and competent to act and hold the estate in his own name."

It will be observed that the above statute provides or creates a cause of action against administrators, and they may be required to pay out of the estates or funds in their hands. It might happen many times that a person owning stock in banks would die, administration be had on their estates, and the time for filing claims expire before the bank failed and before any cause of action accrued. If the filing of the claim, as provided by § 100 of Crawford & Moses' Digest, should be held applicable in a case like this, then § 97 of Crawford & Moses' Digest would also be applicable. And a portion of one paragraph of that section provides: "and all demands not exhibited to the executor or administrator as required by this act before the end of one year from granting of letters shall be forever barred."

Evidently the Legislature, in passing the act under which this suit was brought, had all those things in mind, and it therefore provided that suits might be brought against administrators for the purpose of reaching estates or funds in their hands. This claim did not arise during the lifetime of the owner of the stock. There was no claim whatever against him nor against his estate at the time he died. The liability arises when the assessment is made, and in this case it was practically a year after the death of Mr. Berlin. If the administrator, under the directions of the probate court, had sold property or compromised a debt, or in any other way had come in possession of bank stock and held it as administrator, he would be liable under the statute, although the deceased had never owned the stock. It was therefore not a debt of the testator. He never owed it. There was never a time during his life when he was liable.

In a case tried in the Federal Circuit Court of South Dakota it was said:

"While it is insisted that the claim is barred, it is as earnestly insisted that proper practice requires that. the question whether the claim is barred or not should be left to the county court of Minnehaha County to determine, following the practice in *Wickham* v. *Hull,* 60 Fed. 326. If this court was of the opinion that the decision of this case required the court to construe a State statute, it would do so; but, it being of the opinion that it is not necessary so to do, it will proceed to dispose of the case upon the only grounds that to it seem tenable. Any theory upon which it is sought to maintain that the claim here attempted to be enforced is an ordinary claim against the estate of Charles C. Carpenter, deceased, to be presented and allowed in the manner required by the laws of the State of South Dakota, and, if not so presented and allowed, to be forever barred by the statute of nonclaim of said State, involves a total misconception of the object, meaning, and effect of §§ 5151, 5152, Rev. St. U. S.

"Section 5151 provides: 'The shareholders of every national banking association shall be held individually responsible equally and ratably, and not one for another, for all contracts, debts and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares.'

"Section 5152 provides: 'Persons holding stock as executors, administrators, guardians or trustees, shall not be personally subject to any liabilities as stockholders, but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name.'

"Now, it was not necessary for Congress to provide by law that the estates of decedents should be liable for the debts of deceased persons. That result would follow, irrespective of § 5152. But Congress intended to,

and did, provide that the estate of the testator or intestate in the hands of an executor or administrator should be liable in like manner, and to the same extent, as the testator or intestate would be if living, and competent to act, and held the stock. By the language of the section last referred to, the death of the testator or intestate does not in any way affect the liability of the estate of the testator or intestate, except, if no liability on the stock arises until after the estate is fully distributed, then there would be no estate to be charged. On the 23rd day of November, 1896, when the Dakota National Bank failed, Frances G. Carpenter, as the executrix of the estate of Charles C. Carpenter, deceased, under the laws of the United States and of South Dakota, was a shareholder therein. To the extent of 100 per cent. of the par value of the stock held by her, the estate of Charles C. Carpenter in her hands on that day was liable; not as if Carpenter was dead, but in the same manner, and to the same extent, as if he was living; the clear object of the statute being to make the estate liable for a debt arising after the death of a testator or intestate, as well as those arising before." *Zimmerman* v. *Carpenter*, 84 Fed. 747. See also *Brown* v. *Ellis*, 86 Fed. 357; *Rankin* v. *Miller*, 207 Fed. 602.

There are numerous authorities supporting the views that are herein expressed, but we deem it unnecessary to call attention to more of them. It will be observed that the statute quoted in the last case, § 5152 of Revised Statutes U. S., is very similar to the latter part of § 702 of Crawford & Moses' Digest, which reads as follows: "Provided, that persons holding stock as executors, administrators, guardians or trustees shall not be personally liable as stockholders, but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward or persons interested in such trust fund would be if living, and competent to act and hold the estate in his own name."

The administrator would not be liable unless he had the estate or funds in his hands with which to pay any judgment that might be had against him. If a person dies, leaving stock in a bank, and his estate is fully administered and the bank stock disposed of, whether by sale or transferring it to the heirs or the person to whom it might be given by will, there would then be no liability against the administrator. The administrator and executor are liable under this statute only when they have property or funds in their hands, as such administrator or executor, with which to pay the judgment. And if they have no such funds, they are not liable. The statute expressly provides that the estates and funds in their hands shall be liable.

We find no error, and the judgment is affirmed.