**FUTRELL v. MILLER.**
No. 11387.

Circuit Court of Appeals, Eighth Circuit.
Aug. 1, 1939.

John C. Sheffield, of Helena, Ark., for appellant.

J. B. Daggett, of Marianna, Ark. (Daggett & Daggett and C. E. Daggett, all of Marianna, Ark., on the brief), for appellees.

Before GARDNER and WOODROUGH, Circuit Judges, and BELL, District Judge.

BELL, District Judge.

This is an action by E. B. Futrell, appellant, as Receiver of a closed national bank, against Max D. Miller, individually, and as Administrator of the estate of T. C. Conner, deceased, and the heirs at law of said deceased to recover an assessment on the capital stock of the bank. The defendants moved to dismiss on the ground that the facts alleged did not constitute a cause of action. The motion was sustained as to Miller individually and as Administrator but denied as to the heirs. This appeal was taken from an order of the court sustaining the motion as to Miller individually and as Administrator.

The deceased died intestate on June 18, 1931, and Miller was appointed Administrator of his estate on June 24, 1931. At the time of his death the deceased owned certain shares of stock in the bank of Marianna, Arkansas, which later was consolidated with the Lee County National Bank of that city. Under the agreement for consolidation a portion of the stock of the latter bank was issued to the stockholders of the former. As Administrator Miller, on proper orders of the Probate Court, agreed to the consolidation and on June 2, 1932, accepted the shares of stock due thereunder to the estate of the deceased.

The Lee County National Bank suspended business March 6, 1933, and a receiver was appointed May 1, 1934. Two assessments of 50% each were levied on the stock, one on July 6, 1934, the payment of which was demanded on or before August 13, 1934, and the other on November 6, 1935, the payment of which was demanded on or before December 13, 1935. The assessments on the stock that had been issued to the Administrator of the estate of the deceased aggregated $3,091.66. Payment was demanded of the Administrator but the claim was not filed in the Probate Court or presented therein for allowance and payment.

The Administrator on February 10, 1937, filed his final account which was approved and the balance of the assets distributed to the heirs. The Administrator was discharged February 16, 1937. The stock assessments were not paid and no provision was made for their payment. The assets distributed to the heirs were in excess of the sum due on the assessments. This action was commenced February 9, 1938.

The motion of the Administrator to dismiss was sustained because the claim had not been presented to the Probate Court for allowance as provided by the statutes of the state of Arkansas. Pope's Digest, Section 100, provides: "Any person may exhibit his claim against any estate as follows: if the demand be founded on a judgment, note or written contract, by delivering to the executor or administrator a copy of such instrument, * * * exhibiting the original, and if the demand be founded on an account, by delivering a copy thereof, setting forth each item distinctly and the credits thereon. * * *" Section 101 prescribes the form of affidavit required as proof of a claim. Section 97 provides: "All such demands as may be exhibited as aforesaid after six months and within one year after the first letters granted on the estate; and all demands not exhibited to the executor or administrator as required by this Act, before the end of one year from the granting of letters shall be forever barred."

The claim involved did not become absolute until the assessments were made, one on June 6, 1934, and the other on November 6, 1935, so that the time allowed by the statute for presentation of claims against the estate expired before the claim came into existence and for that reason it was not possible to present it within the period allowed by the statute. It should be observed that the stock on which the assessments were levied was not owned by the deceased but came into the assets of his estate and was issued to the Administrator as a result of the consolidation of the Lee County National Bank with the bank of Marianna in which the deceased did own stock, and that one of the assessments was made about three years and the other more than four years after the letters of administration were granted. Likewise, it should be observed that the Administrator was discharged February 16, 1937, prior to which he had fully distributed all the assets of the estate, and that this action was not commenced until February 9, 1938.

The United States Code, 12 U.S.C.A. § 64, provides that a stockholder of a national bank shall be individually responsible for all the debts of the association to the amount of his stock at its par value in addition to the amount invested therein. The Code, 12 U.S.C.A. § 66, further provides: "Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name."

Obviously, Section 64 imposes a liability on a living stockholder of a closed national bank, and Section 66 imposes a like liability on the estate of a deceased stockholder but exempts the legal representative from personal liability. The character of the claim and the procedure to enforce it have been fully defined in Pufahl v. Estate of Parks, 299 U.S. 217, 57 S.Ct. 151, 156, 81 L.Ed. 133, wherein the Court said: "The statute creates an unsecured and unpreferred claim against a decedent's estate. Where the assessment has been made in the decedent's lifetime an accrued and provable debt exists against his estate; if made after his death a claim against the funds and assets of the estate accrues as of the date of assessment."

The question of procedure is our chief problem. While the claim is based on a federal statute, it must be enforced against the representative of a deceased stockholder's estate under local law. In the Pufahl case the Court said:

"The statute evidences no intent to prefer the assessment over other claims against the estate, or to exempt the receiver from the pursuit of the remedy prescribed by the local law for collection of claims of the same sort.

" * * * Where, as here, a res has come into the possession and under the control of a state court, one having a right to go into the federal court, either by reason of diversity of citizenship, or because he is a federal officer, cannot obtain a judgment or decree entitling him to interfere with the administration of the res by the court having its possession. While he may not be denied his right to prosecute an action to judgment or a suit to final decree in the federal court, such judgment or decree can do no more than adjudicate the validity and amount of his claim. The marshaling of that claim with others, its priority, if any, in distribution, and all similar questions, are for the probate court upon presentation to it of the judgment or decree of the federal court. Thus, though a receiver should resort to the United States District Court he would need to present, in a probate court, any judgment obtained, if he desired payment from the assets under the control of the latter.

" * * * And if under the state statutes demands against a decedent's estate must be proved in a probate court the receiver cannot pursue some other form of action. This is not to say that a state may deny all remedy for the substantive right arising out of the federal statute (see Seabury v. Green, supra [294 U.S. 165, 55 S.Ct. 373, 79 L.Ed. 834, 96 A.L.R. 1463]); it is merely to say that if the state does not discriminate against the receiver's claim in favor of others of equal dignity and like character, there is no warrant for exempting the claim from the effect of local statutes governing procedure or limiting the time for prosecution of action."

Thus it appears that the quality of a claim based on an assessment of stock in a closed national bank and the remedy for enforcing it against the estate of a deceas-

ed stockholder are fully covered in the Pufahl case. The receiver has a claim which would support an action of debt at common law against a living stockholder and if made after his death the claim against the estate must be presented and proved in accordance with the law of the state in which it arises. This does not mean that the receiver is restricted in all cases to the remedy of filing a claim in the probate court. A suit may be maintained in a court of competent jurisdiction under some circumstances to establish a claim against the assets of a deceased stockholder whether they may be found in the hands of the legal representative or the heirs and distributees. Luce v. Thompson, 8 Cir., 36 F.2d 183. In the case before us the assets of the estate had been distributed, the Administrator had been discharged, and the proceeding in the probate court had been terminated long before this action was commenced. It was more than three and one-half years after the first assessment, more than two years after the second assessment, and one year after the Administrator was discharged before this suit was filed. There was no estate or funds in the hands of an Administrator when suit commenced and it should be noted that the statute provides that the estate and funds in their (legal representatives) hands shall be liable. Appellant's remedy in this case is against the heirs to whom the assets were distributed. Pufahl v. Estate of Parks, supra; Luce v. Thompson, supra.

It has been held that the liability under the statute constitutes a lien on the assets of a stockholder and that it therefore might be enforced against the estate of a deceased stockholder without regard to the local laws governing the presentation, allowance and classification of claims against estates. Zimmerman v. Carpenter, C.C., 84 F. 747; Berlin v. Rainwater, 174 Ark. 66, 294 S.W. 368. In the Berlin case the Supreme Court of Arkansas in considering a statute of that state identical with the federal statute held, in effect, that it created a lien on the assets of the estate and that such a liability need not be presented as a claim against the estate. The Court in that case relied largely on the Zimmerman case, but the Supreme Court in the Pufahl case has since expressly said that the Zimmerman case, regardless of the theory on which it was based "is wrong." For the same reason the Berlin case also is afield. It may be said that the Berlin case

was decided under a misconception of the federal law as drawn from Zimmerman v. Carpenter, supra; Brown v. Ellis, C.C., 86 F. 357, Rankin v. Miller, D.C., 207 F. 602, but, if these decisions were susceptible to the interpretations given them, the rule is contrary to the doctrine of the recent decision in the Pufahl case. As the Supreme Court of the United States now has disapproved the authorities followed in the Berlin case, it is incumbent on us to adhere to the federal rule as expressed in the Pufahl case.

As we have seen, "the statute creates an unsecured and unpreferred claim against a decedent's estate" only. Section 66 of the Code makes the deceased stockholder's estate liable in a like manner and to the same extent only as he would have been liable if living. The Administrator was not prevented from making distribution of the estate pursuant to the order or decree of the probate court in the administration of the estate; neither was he required to demand a bond or security from the heirs for the payment of such claim as might be made on the stock assessment. Consequently, appellee was not liable as Administrator of the estate. Under the facts of this case we are constrained also to hold that the Administrator was not liable individually for devastavit. It was not error to enter the order sustaining the motion to dismiss as to appellee and the order is affirmed.