### CHATHAM PHENIX NAT. BANK & TRUST CO. v. HELVERING, Commissioner of Internal Revenue.

No. 6472.

United States Court of Appeals for the District of Columbia.

Argued Oct. 12, 1936.

Decided Nov. 30, 1936.

Albert A. Jones, of Washington, D. C., and Basil Robillard, of New York City, for petitioner.

Frank J. Wideman, Sewall Key, Robert H. Jackson, Harold Allen, J. Louis Monarch, Norman D. Keller, S. Dee Hanson, and Warner W. Gardner, all of Washington, D. C., for respondent.

Before ROBB, VAN ORSDEL, GRONER, and STEPHENS, JJ.

VAN ORSDEL, J.

This case is here for review of a decision of the United States Board of Tax Appeals.

The petitioner, a national bank (hereinafter referred to as the taxpayer), paid an income tax of $390,919.22 for the year 1930, after deducting the sum of $349,577.19 for bad debts. In 1932 the taxpayer filed an amended return for the year 1930, claiming a total deduction of $2,698,925.15 for bad debts, and filed a claim for refund of $282,-

135.75, based upon the deduction of these additional bad debts. The Commissioner of Internal Revenue disallowed this claim, and on September 21, 1933, issued a deficiency notice of $213.99, based on the disallowance of certain deductions for depreciation.

The taxpayer petitioned the Board of Tax Appeals for a redetermination of its tax liability. The Commissioner answered, and a hearing was had before a division member on October 8, 1934. The taxpayer was represented by one Brady, a certified public accountant. Brady offered, as his only witness, the auditor for taxpayer from 1924 to 1932, who prepared the tax returns for those years. Through this witness Brady attempted to introduce in evidence an unsigned carbon copy of a national bank examiner's report, dated November 21, 1930, purporting to show the worthlessness of bad debts listed therein. Upon objection by counsel for the Commissioner, this report was excluded. The division member found against the taxpayer and entered judgment for the Commissioner.

Brady then withdrew his appearance for the taxpayer, and one Jones, an attorney, was substituted in his stead. On the same date Jones moved to vacate the judgment and for a retrial. In support of the motion numerous affidavits were filed, including one signed by Brady, in which it is stated that one McGough, an employee of taxpayer's tax department, without authority and without the knowledge of officials of taxpayer, undertook to handle the matter of taxpayer's appeal for a redetermination of the deficiency assessed against it; that he procured Brady, an employee of taxpayer's industrial department, to become admitted to practice before the Board of Tax Appeals as a certified public accountant, in order to handle the case; that McGough assured Brady that he (Brady) was to act as "nominal counsel" and that he (McGough) "would take care of the necessary proof and the technical presentation of the matter"; that Brady informed McGough that he was not familiar with the rules of practice before the Board, and McGough told him "it resembled a round table discussion as he understood it, and would be quite informal, and that all that would be necessary for me to do was to be present at the Board hearing and he would take care of the necessary procedure and proof"; that Brady made no preparation of the case, beyond a superficial examination of the bank examiner's report offered at the hearing; that Brady did not realize the significance of his appearance before the Board on behalf of taxpayer; that Brady was "surprised to find the nature of the proceedings," but when the case was called he thought that he had to go on; that he never thought that the taxpayer had authorized him to present evidence upon its behalf, or that he would be called upon to do so; that he did not know that a continuance could be had and that it never occurred to him to ask for one.

Other affidavits set forth the lack of authority on part of McGough to handle this matter, and the ignorance of taxpayer's officers as to the proceedings before the Board. Still other affidavits set forth in detail information as to taxpayer's bad debts for the year 1930, which information it is alleged was not available at the time of the hearing and could not have been, by the exercise of reasonable diligence, discovered at that time.

The division member denied the motion, without hearing argument. Jones then petitioned for a review by the full Board. The Board refused to review the order of December 21, 1934, denying taxpayer's motion to set aside the judgment and for a retrial, holding that this order, not being a division report forming the basis for entry of the final decision in the proceeding, was not referable to the full Board for review, under the rules of the Board and the applicable statutes.

The taxpayer now petitions this court for review, under the provisions of sections 1001–1003 of the Revenue Act of 1926, 44 Stat. 109, as amended by section 1101 of the Revenue Act of 1932, 47 Stat. 286 (26 U.S.C.A. §§ 641–645).

The record discloses that, when the case came on for hearing before the division member, Brady, a certified public accountant and not a member of the bar, appeared for the taxpayer, while the Commissioner was represented by two members of the staff of the General Counsel of the Bureau of Internal Revenue. The hearing, as required by law, was conducted strictly in accordance "with the rules of evidence applicable in courts of equity of the District of Columbia." Brady, being wholly unfamiliar with the rules of evidence, was at a great disadvantage. This is quite apparent from the division member's comments as to the "muddiness" of Brady's presentation and as to his "inadequacy," as well as from other caustic criticisms made by the division member in the course of the proceedings.

The record discloses that taxpayer at the hearing before the Board member relied solely on the contention that the bad debts charged off in 1931 were not ascertained to be wholly worthless in 1930, thus bringing the case within the ruling in Liberty Bank & Trust Co. v. Commissioner (C.C.A.) 59 F.(2d) 320. The position of the taxpayer seems to have been wholly misunderstood. The Board member held that there was no issue between the Commissioner and the taxpayer, since, as he understood the controversy, the taxpayer admitted the worthlessness of the debts in the year 1930, and also admitted that they were not charged off until the following year. This, however, is not supported by the record. An examination of taxpayer's books for the year 1930 by a national bank examiner disclosed the segregation of bad debt items into classifications of "Overdue," "Slow," "Doubtful," and "Loss." Taxpayer in its original return claimed a deduction to the extent of $349,577.19 for bad debts. An examination of taxpayer's books in 1932 by the field agents of the Commissioner of Internal Revenue resulted in an additional assessment of approximately $2,000. Taxpayer accordingly filed an amended return, claiming an additional deduction of $2,698,-925.15 of bad debts, and at the same time filing a claim for a refund of $262,135.75 of the tax paid in 1930. The Commissioner, in his notice to the taxpayer, refused the deduction for bad debts on the ground that they were known by the taxpayer to be worthless in 1930 and were not written off in that year.

Taxpayer's position seems to have been clearly understood by counsel for the Commissioner, but he contended that, notwithstanding this, taxpayer was not entitled to the deduction, for the reason that it had not charged off the bad debts in 1930. The Board member, however, refusing to consider the report of the bank examiner, decided the case on the ground that the evidence did not establish the worthlessness of the debts in 1930. The Commissioner here admits that under the provisions of the 1928 act there are two classes of bad debts, those wholly worthless and those recoverable in part; that as to the first the charge-off must be made in the taxable year, if then ascertained to be worthless; that as to the second, where the debt is recoverable in part, it may be charged off in part, but this is not required to be done in the taxable year, but may be done when the Commissioner is satisfied that it is in fact recoverable only in part. Liberty Bank & Trust Co. v. Commissioner, supra.

Counsel for the Commissioner, objecting to the introduction of the national bank examiner's report at the hearing before the Board member, referred at length to the prior proceedings between the taxpayer and the Commissioner. He contended that the investigation made of the taxpayer's books by the Commissioner's agents showed that the bad debts in the additional amount claimed in the amended return had not been written off in the year 1930, and that this fact left the Bureau no other choice than to reject the claim. He did not contend that the debts were not in fact worthless, since in the Commissioner's answer this fact is substantially admitted. In reply to the position of counsel for the Commissioner, Brady admitted that the charge-off was not made in 1930, but insisted that the claim that the taxpayer should be allowed for having actually charged them off in a subsequent year should be considered on the basis that the debts were not found in 1930 to be wholly worthless. Thus it appears that the claim was denied by the Commissioner on the sole ground that the charge-off was not made in 1930.

■ We realize that the burden was upon the taxpayer to prove its case, and that it failed to introduce sufficient evidence in this respect, but we are here confronted with a case wherein it is perfectly clear that, by reason of the unauthorized action of Brady in attempting to appear as a representative of the taxpayer (for which, as we gather from the record, the Board punished him by disbarment from further practicing before it), there was really no hearing according to law, and in which it appears that there may be a valid claim on the part of the taxpayer for a refund of the tax paid. We think, under these circumstances, that a hard and fast rule should not be applied, the result of which may be to enrich the government unjustly and punish the taxpayer.

■■ The taxpayer appeals from both the division member's order of December 21, 1934, denying a retrial, and the decision of the Board refusing to review the order of December 21, 1934. As to the order of December 21, 1934, neither the applicable statutes nor the rules of practice adopted by the Board of Tax Appeals deal specifically with motions for rehearing. It has been held, however, that the Board has power to grant a rehearing, Helvering v. Continental

550

Oil Co., 63 App.D.C. 5, 8, 68 F.(2d) 750; Burnet v. Lexington Ice & Coal Co. (C.C.A.) 62 F.(2d) 906, 908; Garden City Feeder Co. v. Commissioner of Internal Revenue, 27 B.T.A. 1132, and, further, that the granting of a rehearing lies within the sound discretion of the Board, Bankers' Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 313, 53 S.Ct. 150, 151, 77 L.Ed. 325. Undoubtedly the court has jurisdiction to determine whether, under all the circumstances, that discretion has been abused.

■ But the power of this court to order a rehearing of the case does not extend only to the abuse of discretion on the part of the Board. ˙ This power may be exercised when necessary to meet the ends of substantial justice. This court has the power under the statute to modify or reverse the decision of the Board, if not in accordance with law, "as justice may require." 44 Stat. 110, section 641 (c), T. 26 U.S.C., 26 U.S.C.A. § 641(c). The cases disclose numerous instances where this broad power has been exercised. Dempster Mill Mfg. Co. v. Burnet, 60 App.D.C. 23, 46 F.(2d) 604; L. J. Christopher Co. v. Commissioner of Internal Revenue, 60 App. D.C. 368, 370, 55 F.(2d) 530; Underwood v. Commissioner of Internal Revenue (C.C. A.) 56 F.(2d) 67, 73; Virginia-Lincoln Furniture Corp. v. Commissioner of Internal Revenue (C.C.A.) 56 F.(2d) 1028, 1033; Helvering v. Edison Securities Corp. (C.C. A.) 78 F.(2d) 85, 91, 92; Fritz v. Commissioner of Internal Revenue (C.C.A.) 76 F. (2d) 460, 461; Commissioner of Internal Revenue v. Langwell Real Estate Corp. (C. C.A.) 47 F.(2d) 841, 842; Slayton v. Commissioner of Internal Revenue (C.C.A.) 76 F.(2d) 497, 498.

In the Virginia-Lincoln Case, supra, the court said: "In addition to this, it appears from the record that petitioner is entitled to relief; and we will not turn him out of court because he may have misconceived his remedy. As we have said before, courts exist to do justice, not to furnish a forum for the technical skill of counsel. In reviewing a decision of the Board, we are given broad powers to affirm, modify, or reverse it 'as justice may require' (26 U.S. C.A. § 1226); and we do not think that justice requires that a petitioner with a meritorious case be turned out of court upon any such technical ground."

In the Fritz Case, supra, in considering a petition to review a decision of the Board, the Circuit Court of Appeals for the Fifth Circuit said: "We should not upset this finding of fact unless the board abused its discretion in refusing to reopen the case for further evidence. We recognize on the one hand that the board has discretion as a quasi court touching the reopening of its proceedings. Bankers' Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 309, 53 S.Ct. 150, 77 L.Ed. 325; Weiller v. Commissioner. (C.C.A.) 64 F.(2d) 480; Wise & Cooper Co. v. Commissioner (C.C.A.) 53 F.(2d) 843; Washburn Wire Co. v. Commissioner (C.C.A.) 67 F.(2d) 658, 659. And on the other hand our power and responsibility on review extend to the requirement of further trial when error of law, surprise, or arbitrary action makes it proper."

■■ Running through all the cases cited is the similar determination of the courts that, where it appears that a further hearing would be promotive of justice, the taxpayer should be given the opportunity of amending his pleadings and of offering evidence to show that he suffers through a wrongful determination of his tax liability.

In the view we take of this case, it is unnecessary for us to consider the Board's decision refusing to review the order of December 21, 1934.

The order of December 21, 1934, denying petitioner's motion for a retrial, is reversed, and the cause is remanded, with direction to grant a retrial in accordance with the views expressed in this opinion.