## WHITNEY CORPORATION et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 11440.

Circuit Court of Appeals, Eighth Circuit.
July 20, 1939.

R. L. Mayall, of Duluth, Minn. (D. S. Holmes, of Duluth, Minn., on the brief), for petitioners.

Helen R. Carloss, Sp. Asst. to Atty. Gen. (Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before GARDNER and THOMAS, Circuit Judges, and WYMAN, District Judge.

THOMAS, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals affirming the determination of a deficiency in the income tax of the petitioners for the year 1930. The assessment was made upon their consolidated return.

The first question is whether the gain realized by petitioner Whitney Brothers Company, through the receipt of stock of the Merritt-Chapman & Scott Corporation in ultimate payment for assets sold and delivered to its new subsidiary, the Merritt-Chapman & Whitney Corporation, is taxable or is exempt from tax on the theory that the stock received is stock in "a corporation a party to a reorganization" within the meaning of the applicable statute; and, second, whether the transaction was closed in 1930 when the transfers occurred.

The Whitney Corporation, herein called the petitioner, is a Minnesota corporation. In 1930 it owned all of the stock of Whitney Brothers Company, herein called Brothers, a Wisconsin corporation, and of Whitney Materials Company, herein called Materials, a Minnesota corporation. Gwin A. Whitney was president of the three corporations, and they had the same officers. Petitioner

was principally a holding company; Materials was in the sand and gravel business; and Brothers was in the marine contracting business. Petitioner owned some of the assets used by Brothers and Materials; and Brothers owned some of the assets used by Materials.

The Merritt-Chapman & Scott Corporation, referred to herein as Scott, was a Delaware corporation doing business in New York City as a general contractor.

In 1930 as a result of negotiations between Gwin A. Whitney and Scott a plan was worked out and adopted which contemplated the merger of the marine contracting business of Brothers, carried on principally in the Great Lakes region, with that of Scott whose business activities had been confined in the past to the Atlantic coast. The plan was approved by petitioner, Brothers and Materials; and Gwin A. Whitney was authorized to enter into a contract with Scott for its execution. The contract having been made, ratified and confirmed by petitioner and Brothers, the exchanges contemplated were made in December, 1930.

To carry out the plan, and pursuant to the terms of the contract, a new corporation, the Merritt-Chapman & Whitney Corporation, herein called New, was organized. The object of the proposed merger, as disclosed by the written plan, the contract and the testimony of Gwin A. Whitney, hereinafter called Whitney, was to vest in New, which would eventually be a wholly owned subsidiary of Scott, the marine contracting business of Brothers and all the assets of petitioner or Brothers used in such contracting business by Brothers, but to be paid for by Scott, parent of New, with cash and the common and preferred stock of Scott.

Some time prior to the final exchanges made in performance of the contract Brothers transferred to petitioner assets relating to its contracting business, the net cost of which was $85,362.87, and proper entries in connection with the transfer were made in the books of the two corporations.

The transfer of the assets and stocks of the corporations made in performance of the contract between Whitney and Scott and ratified by petitioner and Brothers was carried out on December 29, 1930. Petitioner transferred to New on that day assets of the value of $201,138.86 including the amount of $85,362.87 previously received from Brothers, and Brothers on the same day transferred to New assets of the value, or net cost, of $126,445.10. The total net cost of the assets transferred by Brothers to New directly and through petitioner was $211,807.97. The assets and liabilities of Brothers after the transfers had been made were $71,670 and $20,300 respectively. At the same time these transfers were made New issued to Whitney 7500 shares of its common capital stock, which in accordance with the resolutions adopted by the boards of directors of petitioner and Brothers confirming the contract between Whitney and Scott were allocated in the proportion of 2700 shares to petitioner and 4800 shares to Brothers.

On December 30, 1930, as a part of the agreement and pursuant to the plan and the resolutions aforesaid, the entire 7500 shares of New stock were transferred to Scott in consideration for which Scott delivered to Whitney $100,250 in cash, Scott's notes for $105,000, 2500 shares of Scott's preferred stock and 10,000 shares of its no par value common stock with warrants to purchase additional shares. Immediately the $100,250 cash and $105,000 of notes were allocated to petitioner and the 2500 shares of preferred and 10,000 of common with the warrants to purchase to Brothers as their respective shares of the consideration based upon the relative amounts of assets contributed by each to New.

After the transfers had been completed Scott had outstanding 28,777 shares of preferred stock and 290,605 shares of common stock. Brothers continued to exist as an inactive corporation.

In auditing the consolidated return of petitioner, Brothers and Materials for the year 1930 the Commissioner determined that a net profit of $227,666.04 was realized by petitioner and Brothers on the transaction and assessed a deficiency of $28,493.86 thereon.

The Board of Tax Appeals found that the cash and notes received by petitioner in the exchange are taxable to the extent of the gain realized either under section 112(a) of the Revenue Act of 1928, c. 852, 45 Stat. 791, 26 U.S.C.A. § 112(a), as a sale, or under section 112(c) (1) of the Act, 26 U.S.C. A. § 112(c) (1), as money and other property received in exchange. No exception is taken in this court to that part of the Board's decision, and the subject will be given no consideration.

The Board held, further, that the preferred and common stock of Scott acquired by Brothers in the transaction was the occasion for computation of taxable gain with-

in the meaning of section 112(a) of the Act. The Board relied upon the decisions of the Supreme Court in Groman v. Commissioner, 302 U.S. 82, 58 S.Ct. 108, 82 L.Ed. 63, and Helvering v. Bashford, 302 U.S. 454, 58 S.Ct. 307, 82 L.Ed. 367.

Section 112(a) of the Act provides that "Upon the sale or exchange of property the entire amount of the gain or loss determined under section 111, shall be recognized, except as hereinafter provided in this section"; and subparagraph (b) (3) of the same section, 26 U.S.C.A. § 112(b) (3), provides that "No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

Assuming, as did the Board, that the transfers of assets by petitioner and Brothers to New in exchange for New's stock would be a reorganization, Scott clearly was not a party to that reorganization. Section 112(i) (1) and (2) Revenue Act of 1928, 26 U.S.C.A. § 112 note. Petitioner contends that the exchange by petitioner and Brothers of the stock of New for cash and stock of Scott was the culmination of a reorganization within the meaning of the statute, and that Scott was a party to that reorganization. We agree with the Board that the transaction can not be broken into two parts resulting in two separate and distinct reorganizations. The entire transaction was comprehended in a single "plan of reorganization" in which all the steps were dependent. The "plan" called for the simultaneous performance of each step, and the resolutions of the Boards of Directors of petitioner and Brothers and of their stockholders were conditioned upon the complete performance of each step and all the parts of the plan. The resolution of the Board of Directors of Brothers among other things provided: "Resolved, that this corporation sell and transfer certain of its properties and its business to said Merritt-Chapman & Whitney Corporation (New), so that this corporation will ultimately receive therefor 2,500 shares of the * * * Preferred stock of Merritt-Chapman & Scott Corporation (Scott), a Delaware corporation (with appropriate stock purchase warrants * * * ), and 10,000 shares of the common stock of said corporation."

The resolutions adopted by the stockholders were of the same import.

The transaction was carried out by the making of all the exchanges contemplated by the plan on December 29 and 30, 1930, as a result of which Brothers transferred a part of its assets to New and at the conclusion of the transfers held stock in Scott, which held all of the outstanding stock of New.

The simple question then is whether Scott was a party to the reorganization of Brothers "in pursuance of the plan of reorganization" adopted and executed.

In Groman v. Commissioner, supra, the Supreme Court of the United States construing the reorganization sections of the statute here involved said [302 U.S. 82, 58 S.Ct. 112, 82 L.Ed. 63]: "* * * where, pursuant to a plan, the interest of the stockholders of a corporation continues to be definitely represented in substantial measure in a new or different one, then to the extent, but only to the extent, of that continuity of interest, the exchange is to be treated as one not giving rise to present gain or loss."

The rule was later approved and followed by the Supreme Court in Helvering v. Bashford, supra. In both cases it was held that a parent corporation is not "a party to the reorganization" under circumstances where the parent pays with its own stock and securities for assets conveyed to its subsidiary. It is contended that those cases are distinguishable from the instant case on the facts. The facts, it is true, are not identical in all these cases; but the rule requiring continuity of a substantial interest is applicable with equal force in each of them. See also Helvering v. Minnesota Tea Co., 296 U.S. 378, 385, 56 S.Ct. 269, 80 L. Ed. 284.

After the exchanges were completed Scott owned one hundred percent of the outstanding stock of New; but Brothers owned only a little more than three percent of the common and less than nine percent of the preferred stock of Scott. Brothers' ownership of the Scott stock did not, therefore, represent in substantial measure a continuing definite participation in New. Further, assuming that the assets contributed by Brothers were correctly represented by 4800 shares of the stock of New, which had outstanding a total of 7500 shares, then the stock of Scott acquired by Brothers did not represent a continued interest in New measured by the assets conveyed by Brothers in any substantial degree whatever. The rule of continuity of interest contemplates a con-

tinued and substantial interest and participation of the transferor corporation or its stockholders in the ownership of the corporation to which the title to the assets is transferred. When the consideration for the transfer is paid by some one other than the transferee corporation the payor, whether banker, broker or another corporation, is not a party to the reorganization; and the consideration received by the transferor from such third party is "other property" under the rule and the gain is not exempt from the tax. The plain intent of the statute can not be evaded by contract or otherwise. Viewed from any angle Scott was not a party to the reorganization of Brothers; and the stock of Scott acquired by Brothers was "other property" giving rise to taxable gain. Groman v. Commissioner, supra, 302 U.S. page 89, 58 S.Ct. 108, 82 L. Ed. 63; Helvering v. Bashford, supra, 302 U.S. page 458, 58 S.Ct. 307, 82 L.Ed. 367.

The petitioner cites and relies upon the case of Schuh Trading Co. v. Commissioner, 7 Cir., 95 F.2d 404, 406, as demonstrating that Scott was a party to the reorganization. In that case the contract of the Schuh Drug Company and all its stockholders with McKesson & Robbins, Inc., "provided for the transfer of the drug business and property of the Schuh Drug Company to McKesson & Robbins or its nominee" in exchange for cash and stock of McKesson & Robbins. It was not contended before the Board that no reorganization resulted; and the court held that "The mere fact that McKesson & Robbins, the active party to the contract of reorganizaion, directed that the assets should be transferred to its nominee instead of directly to itself in no wise detracts from the fact that McKesson & Robbins contracted to receive and did in fact receive through its nominee that which it contracted for." In so far as the decision in that case is inconsistent, if at all, with the decisions of the Supreme Court in the Groman and Bashford cases we do not undertake to follow it.

We conclude that Scott was not a party to the reorganization of Brothers. The continuity of interest required was lacking.

 The second contention of petitioner is that conceding arguendo that Brothers realized a taxable gain from the transaction no determination of profit could in any event be made during the taxable year 1930. This contention is based upon the fact that 1667 of the 2500 shares of preferred stock of Scott issued to Brothers were deposited with the New York Trust Company as a guaranty that the earnings of New for a period ending December 31, 1931, should be not less than $150,000. This guaranty was provided for in the contract between Whitney and Scott. The stock was issued in 1930 to Brothers, and then deposited as security on condition that one share should be forfeited for each $90 the profits fell below the guaranteed amount. The settlement of the escrow agreement was made about a year and a half after it was executed, and at that time about 520 shares of the preferred stock were surrendered. Any dividends on the stock while in escrow were receivable by Brothers.

The theory of petitioner is that the amount of preferred stock of Scott to be realized by Brothers could not be determined until the end of the period of the escrow, and that therefore the gain resulting from the transaction, if any, could not be determined during the year 1930. Petitioner cites the case of Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 57 S.Ct. 569, 577, 81 L.Ed. 755, in which title to certain shares of stock passed to the taxpayers and the court held that "regard being had to their highly speculative quality and to the terms of a restrictive agreement making a sale thereof impossible", they did not have a fair market value capable of ascertainment when acquired. The essential basis of the holding in that case is absent in the present case. Here it was stipulated that the fair market value was $80 a share. It was not speculative. Upon this point the decision of this court in Bonham v. Commissioner, 8 Cir., 89 F.2d 725, is controlling. In that case a contract for exchange of certain stocks required the deposit of 750 shares until the fulfillment of certain conditions relating to the payment or securing of certain obligations. This court held that the entire profit was taxable for 1929, the year in which the title to the stock was acquired. When the rights of the parties are definitely fixed and ascertainable the profit is determinable. Commissioner v. Cleveland Trinidad Paving Co., 6 Cir., 62 F.2d 85; Commissioner v. R. J. Darnell, Inc., 6 Cir., 60 F.2d 82.

The Board correctly held that the profit realized by Brothers was taxable in the year 1930.

The decision of the Board is affirmed