**HEINER. Former Collector of Internal Revenue, v. GWINNER.**

**GWINNER v. HEINER, Former Collector of Internal Revenue.**

Nos. 7025, 7031.

Circuit Court of Appeals, Third Circuit.

Sept. 9, 1940.

Writ of Certiorari Denied Dec. 23, 1940.

See 61 S.Ct. 396, 85 L.Ed. ——.

John A. McCann, W. A. Seifert, William Wallace. Booth, and Thomas P. Johnson, all of Pittsburgh, Pa. (Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., of counsel), for plaintiff.

George Mashank, U. S. Atty., and Elliott W. Finkel, Asst. U. S. Atty., both of Pittsburgh, Pa., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Michael H. Cardozo, IV, Sp. Assts. to the Atty. Gen., for defendant.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

These cross-appeals are from a judgment of the District Court for the West-ern District of Pennsylvania, in a suit brought by the plaintiff to recover income tax alleged to have been overpaid by him for the year 1930. We shall consider first the defendant's appeal. The pertinent facts involved in it are as follows:

In 1930 Duquesne Steel Foundry Company, hereinafter called Duquesne, and two other corporations reorganized and transferred their assets to Continental Roll & Steel Foundry Company, hereinafter called Continental. The plaintiff owned 625 shares of Duquesne stock which he had acquired prior to March 1, 1913. On that date it had a fair market value of not less than $127.50 per share which was greater than its cost to the plaintiff. In accordance with the reorganization plan the plaintiff received for each share of his Duquesne stock $96.33 in cash. In addition certificates for preferred and common stock of Continental were issued in his name and delivered to an escrow agent. Endorsed upon these certificates was the legend that the stock could not be sold nor exchanged for a period of one year unless the restriction was terminated by mutual consent of all the parties. Later, but in the same year, the plaintiff was permitted to pledge the preferred stock for a bona fide indebtedness, but the restriction against sale or exchange remained in force.

The plaintiff made his income tax returns on the cash receipts and disbursements basis. In computing his income tax for 1930 he treated the Continental preferred stock as having a fair market value of $94 per share and the common stock as having a fair market value of $27.50 per share. Based upon these valuations he reported in his income tax return for 1930 a capital gain as a result of the exchange of his stock for cash and securities in the new corporation.[1]

Thereafter the plaintiff filed a claim for refund alleging that no gain resulted from the stock transaction for two reasons: first, that the Continental stock had no fair market value because of the restriction upon its free transfer, and, second, that the Continental stock was not income to him in 1930 for tax purposes, since it was delivered to the escrow agent and not

---

[1] Sections 111 (a), (c), (d), 112 (a), (c) (1), and 113 (b) (1) (2) of the Revenue Act of 1928, 26 U.S.C.A.Int.Rev.Acts pages 376, 377, 378, 383, are the applica-ble sections for the determination of gain or loss resulting from the sale or other disposition of property.

to him. The Commissioner denied the refund. The district court sustained the taxpayer's contention that the Continental stock had no market value because of the restrictive agreement.

■■ Upon the defendant's appeal the plaintiff relies upon both grounds to sustain the judgment in his favor. In a suit to secure the refund of taxes previously paid the presumption is that the taxes were rightly collected upon assessments correctly made by the Commissioner. The burden is upon the taxpayer to prove all the facts necessary to establish the illegality of the collection. Niles Bement Pond Co. v. United States, 281 U.S. 357, 361, 50 S.Ct. 251, 74 L.Ed. 901. The assessment in the present case was based upon market values reported by the taxpayer in his return. The burden was upon him in the district court to show either that no market value in fact existed or that the values thus reported by him were excessive. He sought to sustain the former proposition by offering in evidence the restrictive agreement to which we have referred.

■ The courts have on several occasions allowed proof of the fair market value of stock despite the fact that there was a restriction upon its free transfer. Fesler v. Commissioner, 7 Cir., 38 F.2d 155, certiorari denied, 281 U.S. 755, 50 S.Ct. 409, 74 L.Ed. 1165; Newman v. Commissioner, 10 Cir., 40 F.2d 225, rehearing denied, 10 Cir., 41 F.2d 743, certiorari denied, 282 U.S. 858, 51 S.Ct. 33, 75 L.Ed. 760; Wright v. Commissioner, 4 Cir., 50 F.2d 727, certiorari denied, 284 U.S. 652, 52 S.Ct. 32, 76 L.Ed. 553. The restriction upon the sale or exchange of stock of course postpones the right of the owner of the stock to transfer title until the expiration of the period or its earlier termination and as a practical matter results in limiting the number of prospective purchasers to those who do not desire immediate delivery. In our opinion, however, it does not operate of and by itself to deprive the stock of a market value. If the assets and business of Continental appeared to prospective investors to be such as to make an investment in Continental lucrative there is no reason to believe that they would have been unwilling to pay some fair price for the stock, even though its delivery must necessarily have been postponed a year.

■ The plaintiff relies upon Helvering v. Tex-Penn Co., 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755; Propper v. Commissioner, 2 Cir., 89 F.2d 617, and Schuh Trading Co. v. Commissioner, 7 Cir., 95 F.2d 404, as decisive authority for the position he takes that a restriction upon the free sale of stock deprives it of a fair market value. In the Tex-Penn case, however, there was an element present which was deemed essential to the court's conclusion and which is lacking in the present case, namely, that the stock encumbered by the restriction was of a highly speculative character. In that case Mr. Justice Butler said (300 U.S. page 499, 57 S.Ct. page 577, 81 L.Ed. 755): "The court is also of opinion that the judgments must be affirmed upon the ground that in the peculiar circumstances of this case, the shares of Transcontinental stock, regard being had to their highly speculative quality and to the terms of a restrictive agreement making a sale thereof impossible, did not have a fair market value, capable of being ascertained with reasonable certainty, when they were acquired by the taxpayers."

There is no evidence in the present case that the Continental stock was speculative or hazardous in character. We do not think that the Tex-Penn case requires us to hold that a mere restriction against sale for one year, without more, as a matter of law deprives stock of all market value. The restriction in the Propper case was for five years and there were other facts present in that case which sufficiently distinguish it from this one. Insofar as the Schuh Trading Company case may be considered as authority for the plaintiff's position we find ourselves unable to follow it, for the reasons already stated.

To sustain his alternative claim the plaintiff offered opinion testimony which if competent tended to show that the market values were less than those reported in his return. Objections by the defendant to this testimony upon the ground that the witnesses were not qualified to express an opinion were sustained by the trial judge. We agree with the conclusion of the trial judge that the witnesses were not shown to be qualified. It necessarily follows that there was no competent evidence to sustain a finding of the reduced market value claimed in the alternative by the plaintiff.

Our conclusion, therefore, is that the plaintiff failed to produce sufficient evidence to overcome the prima facie correctness of the assessment and that the district court erred in allowing recovery of the tax paid upon the gain resulting from the stock transaction.

This brings us to the contention that the value of the stock which was deposited in escrow subject to a restriction on sale was not income to the plaintiff in the year 1930 because it was not received by him in that year. The shares were issued in his name. Both the number of shares and the date upon which the plaintiff was entitled to receive physical possession of the certificates were fixed in 1930. He had the legal title and the equitable interest; it was only physical possession that was given the escrow agent. His title was in no respect conditional and could not be divested by any future occurrence. The stock became the absolute property of the plaintiff in 1930 and it is, therefore, in that year that he received income to the extent of the value of the stock. Bonham v. Commissioner, 8 Cir., 89 F.2d 725; Whitney Corporation v. Commissioner, 8 Cir., 105 F.2d 438.

The cases relied upon by the plaintiff do not compel a contrary conclusion. Upon their facts they are clearly distinguishable from the case before us. We think the plaintiff received the stock in 1930.

We now turn to the consideration of the plaintiff's appeal, which raises the sole question whether the failure to charge off a debt as worthless in 1930 deprives the taxpayer of the right to deduct the worthless debt in his income tax return for that year.

It appears upon this appeal that the plaintiff advanced $70,669.18 to a corporation in which he was a stockholder. In 1930 he issued execution upon a judgment against the corporation and obtained title at the sheriff's sale to property having a fair market value of $40,035.13. The sale left the corporation without assets. The plaintiff did not charge off his loss of $30,-634.05 in 1930, however, and for that reason the district court refused to allow the deduction sought by him in his claim for refund.

Section 23 of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 357, by virtue of which the plaintiff claims to be entitled to the deduction provides:

"Sec. [§] 23. Deductions from Gross Income

"In computing net income there shall be allowed as deductions: * * *

"(j) Bad Debts. Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part."

It is clear from this section and conceded by the plaintiff that to entitle him to the allowance in the case of a totally worthless debt he must charge off the debt during the same year for which the allowance is claimed. His argument is that the debt was only partially worthless and that accordingly no charge off was necessary or indeed possible. It seems that the courts are by no means in accord on the necessity for a charge off in the case of a partially worthless debt.[2] We deem it unnecessary to pass upon this question, however, for we are of the opinion that the debt involved in the present case was wholly worthless at the end of the taxable year. At that time the debt had been reduced by the payment derived through the sheriff's sale to $30,634.05, which amount the plaintiff concedes was wholly uncollectible. He likewise concedes that he did not charge the debt off in 1930. The district court was right in concluding that he was not entitled to the allowance.

The judgment of the district court is reversed and the cause is remanded, with directions to enter judgment for the defendant.

---

[2] For cases holding that a charge off is not necessary see Commissioner v. Liberty Bank & Trust Co., 6 Cir., 59 F.2d 320; Chatham Phenix Nat. Bank & Trust Co. v. Helvering, 66 App.D.C. 330, 87 F.2d 547.

Contra: Santa Monica Mountain Park Co. v. United States, 9 Cir., 99 F.2d 450 certiorari dismissed, 306 U.S. 666, 59 S. Ct. 647, 83 L.Ed. 1062 and comment in United States v. Beckman, 3 Cir., 104 F.2d 260, 264, McMillan v. United States, Ct.Cl., 18 F.Supp. 853.