## KLINE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7981.

Circuit Court of Appeals, Third Circuit.

Argued May 20, 1942.

Decided Sept. 1, 1942.

J. Warren Brock, of Philadelphia, Pa. (Edmonds, Obermayer & Rebmann, of Philadelphia, Pa., on the brief), for appellant.

Joseph M. Jones, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before BIGGS, JONES, and GOODRICH, Circuit Judges.

BIGGS, Circuit Judge.

The petitioner was the owner of a voting trust certificate representing the beneficial interest in 4,500 shares of the stock of E. J. Lavino & Co. On December 24, 1937 the petitioner executed an irrevocable trust and transferred the voting trust certificate to it. He designated himself as trustee and the indenture provided that he was to collect the dividends and pay the net income for his life to his wife. After the settlor's death the interest and principal were to be paid to his wife, to his son, or to his son's descendants.

The sole question presented by the petition at bar is whether the Commissioner's determination of the value of the taxpayer's stock represented by the voting trust certificate which he assigned to the trust which he created was correct for the purposes of the gift tax, for Section 506 of the Revenue Act of 1932, c. 209, 47 Stat. 169, 26 U.S.C. A. Int.Rev.Code § 1005,[1] provides that "If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift." We are concerned therefore with the value of the petitioner's stock as of December 24, 1937.

The petitioner acquired his interest in the stock of the Lavino Company and his voting trust certificate as follows. From time to time commencing in November, 1928, the company distributed shares of its common stock to some of its employees. In November, 1928, Kline received 700 shares which was carried on the books at $25 per share and in October, 1929, he received 3,800 additional shares which was carried on the books at $10 per share. By steps which it is unnecessary to detail these shares came to be represented by the petitioner's voting trust certificate which he made the subject of his gift. The petitioner has been a director and the executive vice-president of the corporation since 1927. All the stock issued by the company to its officers and employees was issued subject to a restrictive agreement which provided the terms, conditions and price at which the stock could be disposed of by the individuals who received it. The stock could not be sold without the consent of the company. If the employee died or severed his connection with the company under conditions acceptable to the board of directors, the company was given an option, to be exercised within one year, to purchase all or any part of the employee's shares of stock at a price not to exceed 75% of its book value as shown on the company's statement at the date of the last closing of its books. If the employee severed his connection with the company under conditions not acceptable to the board of directors or with which the board was not in sympathy, the company had the option to purchase within a year all or any part of the employee's shares of stock at a price not to exceed 50% of such book value determined as before. If the employee should be discharged from the company's employment "for cause approved by the board of directors" the company was given an option to purchase within a year all or any part of the employee's stock at a price not to exceed 33⅓% of book value. The Lavino Company, through its board of directors, approved the transfer of the taxpayer's stock to the trust.

---

[1] The applicable statute and regulations are as follows:

Sec. 506. Gifts Made in Property.

"If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift."

Treasury Regulations 79 (1936 Ed.):

"Art. 17. Gifts made in property.—A gift made in property is subject to the tax in the same manner as a gift of cash, and the amount of the gift is the value of the property at the date of the gift.

"Art. 19. Valuation of property.—

* * *

* * * * *

(3) Stocks and bonds.— * * *

If the value of a security cannot be determined by sales, or from bid and asked prices, as prescribed in the preceding provisions of this subdivision, then, * * * in the case of shares of stock, upon the basis of the company's net worth, earning power, dividend-paying capacity, and all other relevant factors having a bearing upon the value of the stock. * * * *"

All voting trust certificates issued to employees bore specific endorsement to the effect that the certificate and the shares of stock represented by it were to be transferable only upon compliance with the covenants and conditions which we have just set forth.

The Board of Tax Appeals sustained the findings of the Commissioner putting a value of $43 a share upon the stock. The taxpayer has petitioned this court for review.

The last closing of the books of the Lavino Company prior to December 24, 1937, was as of December 31, 1936. The book value of the stock as shown on the balance sheet as of December 31, 1936, was $36.03 a share. The petitioner in his gift tax return for the year 1937 reported the gift of the stock to the trust at a value of $12.68 a share which was supposed to represent one-third of its value as of December 31, 1936.[2] The taxpayer paid a gift tax in the amount of $243.31, apparently assuming that the value of the stock to the trust was one-third of its book value. The Commissioner increased the value of the stock to $43 per share and determined the existence of a deficiency in the petitioner's gift tax in the amount of $13,140.44. At the hearing before the Board the taxpayer produced two expert witnesses who testified as to the value of the stock if it were not subject to the provisions of the restrictive agreement which we have outlined above. The first of these witnesses testified that the common stock, if free of the restrictive covenants, would have a fair market value of $30.90 a share. The second witness testified that if the stock were not subject to the provisions of the restrictive agreement it would have a fair market value within "* * * a low limit of somewheres around 25 and a high limit of somewheres between 35 and 40; but roughly I would say that $30 a share was a fair price, all things considered." The same expert testified that when the stock was considered subject to the restrictive agreement, its fair market value could not be considered to be in excess of the price at which the company would repurchase it. He testified that when the stock was subject to the covenants of the restrictive agreement the stock could not be considered as having any fair market value at all.

The taxpayer takes the position that the testimony of the two experts was the only testimony or evidence in respect to the fair market value of the stock and that the Board disregarded this evidence, thereby committing reversible error, citing the decision of this court in the case of Tex-Penn Oil Co. v. Commissioner, 3 Cir., 83 F.2d 518, affirmed 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755. It should be borne in mind, however, that the circumstances of the Tex-Penn Oil Co. case were of a most unusual nature and that those circumstances are not duplicated or even approximated in the case at bar. The circumstances of the case at bar are more closely analogous to those of Heiner v. Gwinner, 3 Cir., 114 F. 2d 723, 725, where this court dealt with an argument based upon the Tex-Penn Oil Co. case almost identical with that made here. Admittedly, here the petitioner could not have sold his stock, for a sale would have been in violation of the restrictive agreement. The purchaser could not have compelled the Lavino Company to recognize him as the owner of the stock while the taxpayer remained an employee of the company. But the stock had value none the less. The testimony of the experts could be and was nothing more than approximation of value and the courts repeatedly have approved the ascertainment of fair market value of stock when there was no ready market for it. See Helvering v. Kendrick Coal & Dock Co., 8 Cir., 72 F.2d 330, certiorari denied 294 U.S. 716, 55 S.Ct. 515, 79 L.Ed. 1249, and French Dry Cleaning Co. v. Commissioner, 5 Cir., 72 F.2d 167. In Guggenheim v. Rasquin, 312 U.S. 254, 258, 61 S.Ct. 507, 85 L.Ed. 813, the Supreme Court stated that the absence of market price is no barrier to valuation, citing Lucas v. Alexander, 279 U.S. 573, 579, 49 S. Ct. 426, 73 L.Ed. 851, 61 A.L.R. 906. While in the Guggenheim case the Supreme Court was dealing with the value of a single premium life insurance policy for tax purposes and not with stock, the principle there enunciated is none the less applicable here. In Heiner v. Gwinner, supra, this court recognized the fact that a restriction does not destroy market value for tax purposes. In the case at bar the gift of the stock had value for the Lavino Company had expressly approved the transfer of it.

---

[2] The correct book value of the stock was $162,135. One-third of this sum would be $54,045. The petitioner arrived at a value of $57,073.50, upon which he paid, as we have indicated, a gift tax in the amount of $243.31.

■ Other facts must be considered. The Lavino Company has a splendid earning record, the dividends upon the common stock frequently amounting to $4 a share. The value of a stock is put by many conservative authorities at ten times its annual earnings. Other authorities set the value of a stock at twelve to fifteen times its annual earnings. Some stocks, considered sound, today sell at twenty-five times their annual earnings. The earnings of the Lavino Company for the years appearing in the record were in excess of the sums paid out by way of dividends. While the company had poor earnings in 1938, this year was a notable exception to an otherwise fine earning record. From 1936 to 1939 the company's position steadily improved. At the time the petitioner created the trust he was fifty-nine years of age and had a life expectancy of over fourteen years. His services as a director and as executive vice-president were satisfactory and we think the taxpayer must concede that there is but a small chance of his connection with the company being severed upon a basis which would compel the sale of the stock in the trust at the lowest value prescribed by the restrictive agreement. It is much more probable that the stock when sold would be purchased by the Lavino Company at the highest rating. Be that as it may the earning power of a stock is entitled to great consideration in determining value.

■ The decision of the Board could not be based upon any mathematical certainty.[3] It was necessary for the Board to approximate value from all the facts at hand. We have recounted some of those facts. And when everything has been considered we cannot say that the decision of the Board in affirming the determination of the Commissioner, putting a value of $43 a share upon the stock, was capricious or arbitrary or was not supported by substantial evidence.

Accordingly the decision of the Board will be affirmed.

[3] See the comments made in Paul, Federal Estate and Gift Taxation (1942), Vol. 2, pp. 1221–1222:

"Where there are no fields of black and white formalistic mathematical accuracy would be 'delusive exactness'. One must not be 'enamored' of accuracy, for the best possible valuation is nothing better than a reasonable approximation reached by the via media of compromise and reconciliation of many practical and logically conflicting pressures and shades of contradiction. Syllogistic logic is too simple a tool. Something less artificial, some quality of discretion, something like common sense, a process of inarticulate and unconscious judgment, is needed."