## CHIQUITA MINING CO., Limited, v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10759.

Circuit Court of Appeals, Ninth Circuit.

March 9, 1945.

Rehearing Denied May 3, 1945.

A. P. G. Steffes, of Los Angeles, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, A. F. Prescott, and Harold C. Wilkenfeld, Sp. Assts. to Atty. Gen., for respondent.

Before MATHEWS, STEPHENS, and BONE, Circuit Judges.

BONE, Circuit Judge.

Petition for review by this Court was filed by the taxpayer July 6, 1943 and involves Federal income and excess profits tax liability of the Chiquita Mining Company, Ltd., a corporation, for 1936 to 1938.

The Tax Court entered its decision against petitioner (corporation) on April 8, 1943 ordering and deciding that there are deficiencies in income tax for 1936 and 1938 in respective amounts of $2131.39 and $3279.96 and deficiency in excess profits tax for 1938 in the amount of $1817.79.

Two issues were raised in the pleadings in the Tax Court. The first dealt with proper allowance for depletion. The second dealt with the proper amount to be allowed for depreciation.

The depreciation issue was decided in favor of the taxpayer (petitioner) and is not before us for review.

The property involved in this case consists of certain mining claims acquired by the taxpayer in 1932, in consideration for which it had issued shares of its capital stock to the owners of the claims. The Commissioner of Internal Revenue determined that the taxpayer's mining property, upon which cost depletion was computed, had been acquired in a tax-free exchange and that the basis of the property in the hands of the taxpayer was the same as that of the transferors. In order to sustain the burden of overcoming the Commissioner's determination, it was incumbent upon the taxpayer to prove (1) that the property was not acquired solely in exchange for the taxpayer's stock and that transferors were not in control of the taxpayer immediately after the exchange (§§ 112(b)(5), 113(a)(8) and 114(b)(1) Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Code, §§ 112(b)(5), 113(a)(8), 114

(b)(1); and (2) the fair market value of the property.

The Tax Court made no findings of fact with respect to the depletion issue, stating in its memorandum opinion that "no evidence was offered on the first (depletion) issue and respondent's determination on this point is consequently approved."

During August, 1942, the case was set for trial on October 12, 1942. At trial, counsel for taxpayer asked for subpoenas for two witnesses important to its case. Both were then under indictment on charges growing out of taxpayer's affairs. They appeared and both refused to testify and were thereupon excused by counsel. Neither claimed exemption on the ground that such testimony would incriminate. Counsel for taxpayer (Steffes) then asked for a continuance "until final disposition of the indictments" against these two witnesses. This request was denied by the Tax Court on the ground that it was neither timely nor meritorious. The case had been set for a long time and there was no showing that other witnesses on the same issues could not have been produced. It appears that Steffes was also counsel for one of the witnesses in the said criminal proceedings then pending. Exception was entered against the court's ruling. Counsel for taxpayer subsequently conceded that the two witnesses had been called to testify on the issue of *depreciation,* a question decided in favor of the taxpayer.

This left only the question of depletion in the case. In answer to a query by the court regarding witnesses on this point, Steffes said: "The witness to prove the cost are [sic] the records of the corporation which Mr. Sandrich[1] has here or can produce within probably ten minutes—his office is only a couple of blocks from here—showing the determination of that cost upon two occasions." Sandrich then stated to the court that "these documents we speak of, your Honor, my files, my working papers covering that particular period of time do constitute the only existing record of those transactions."

It appears that the record thus offered to the court consisted solely of the files and working papers of an audit made by Sandrich several years after the events under consideration had taken place, and that they did not include the original corporation records.

The court ruled that in order to sustain its case, provide necessary proof of details of the original transactions involved in the hearing and to show the legal status and various interests of the parties involved, taxpayer should produce in court the original written agreements and company papers executed by parties to the transactions, including stock books and minutes of the corporation, also to produce witnesses who were parties to the relevant transactions to properly identify and explain the exhibits.

Taxpayer then attempted to make a showing of inability to produce in court the original corporation records, this for the purpose of laying a foundation for the introduction of secondary evidence concerning the contents of such original agreements and documents. Steffes offered to testify on this point from his personal knowledge of said records. Sandrich stated that Steffes had personally prepared or redrafted some of them. The documents in question were in existence. Some were in Nevada; some in the hands of the Treasury Department; and some with the S.E.C. All could have been reached by subpoena anywhere in the United States.

Being of the view that a satisfactory showing had not been made, the court rejected the offer of proof by secondary evidence thus tendered since it was evident that the records in question would not and could not be produced at the hearing.

One of the claims of petitioner is that on two prior occasions tax liability had been determined by the "Internal Revenue Department" against the taxpayer in matters related to the value of its mining properties and the contention was that these prior determinations were inconsistent with the Commissioner's position in the present proceeding. These prior determinations apparently involved the tax on the transfer of securities. The court held that such prior determinations "were utterly immaterial", the Tax Court proceedings being de novo; and that the existence of prior determinations was a matter for negotiation with the Government and not the Tax Court, the Commissioner being a party litigant before the Tax Court.

Sandrich asked the Court if a letter from the Revenue Department in which, after examination, they had decided that those [mining] claims were worth a certain

---

[1] Sandrich was an accountant who had made an audit of company records in 1938. He appeared in this case as associate counsel.

amount of money, would be admissible, to which the Court replied: "It is not admissible in this tribunal. You might get Government counsel to agree with you. That is a different thing. But it has no probative weight otherwise."

The Tax Court then closed the record and allowed the parties 30 days to file memoranda in support of their position.

The Tax Court's memorandum opinion was entered on January 5, 1943, holding for the taxpayer on the depreciation issue but sustaining the Commissioner's determination on the depletion issue because of the taxpayer's failure to submit any evidence thereon. On February 4, 1943, the taxpayer filed with the Tax Court a motion to reopen cause for the presentation of evidence upon the depletion issue. As ground for the motion it was stated that by reason of "surprise, misfortune, and excusable neglect" the taxpayer had not been heard on the issue. The motion was accompanied by affidavits, one of which was from Mr. Steffes reciting the facts of his illness immediately prior to and at the time of the hearing. Another was from a physician reciting the physical troubles of Mr. Steffes. A third affidavit was from Mr. Sandrich.[2] It clearly appears from this affidavit that one of the attorneys for the taxpayer had arranged

to procure and produce at the hearing the documentary evidence necessary to the successful presentation of the case and that he had not done so. This documentary evidence consisted of contracts and agreements, together with escrow papers and other instruments evidencing the acquisition, and manner thereof, of the mining claims acquired by petitioner. The affidavit further recited that these documents constituted "the main point" and one of the most essential parts of the taxpayer's case which dealt with depletion. Motion to reopen the case was denied by the Tax Court on February 6, 1943.

An examination of the Specification of Errors covering the matters referred to below, the trial record, and briefs on appeal, followed by an illuminating argument of counsel, convinces us that the Tax Court did not commit reversible error or abuse its discretion in any of the following particulars:

(1) In refusing to grant an indefinite continuance of the hearing before it until the termination of criminal proceedings against two of taxpayer's witnesses who refused to testify. The facts sought to be elicited from these witnesses might have been proven by other witnesses and through the introduction of relevant documents.

[2] Mr. Sandrich deposed: "That affiant had arranged with one A.P.G. Steffes, who is general counsel for petitioner, a member of the bars of the States of California and Nevada, to associate himself as co-counsel in the matter, and to procure and produce, at the hearing, certain documentary evidence necessary to the successful presentation of the case; That said A.P.G. Steffes assured affiant that he was familiar with the transactions involved and that at the time for trial, he, the said A.P. G. Steffes, would appear, and would produce said documentary evidence; That the day before the trial, affiant spoke to the said A.P.G. Steffes and was under the impression that Mr. Steffes was ready to produce said documentary evidence; "That upon the opening of trial, it became evident to affiant that the said A. P.G. Steffes had not produced said documentary evidence, and from affiant's conversation with Mr. Steffes at that time, it became apparent that Mr. Steffes was unable, at that time, to so produce said documentary evidence; That said documentary evidence consisted of contracts and agreements, together with escrow papers and other instruments evidencing the ac-

quisition, and manner thereof, of the mining claims acquired by petitioner, such acquisition, and manner thereof, constituting the main point in the determination of whether or not the original owners of said mining claims were in control of the corporation immediately after such transfer of said mining claims to the Petitioner; "That affiant is advised, and believes, that petitioner herein has a valid and meritorious case upon the merits, with regard to the question of the allowance of a proper deduction for depletion of the ore in the Chiquita Mine; "That affiant relied upon A.P.G. Steffes to present evidence upon that issue before the Honorable Court and affiant did not know at the time of trial of this cause that Mr. Steffes was too ill to assist in the trial, or to transact any business. "That affiant believes that in the interests of justice this cause should be reopened in order that petitioner may have its day in court with regard to the issue involved and that if such rehearing is granted the evidence will show that petitioner is entitled to a redetermination of the rate allowed it for depletion of the ore in the properties owned by petitioner."

Continuances are within the sound discretion of the trial court.[3]

■■ (2) In holding that evidence of prior administrative determinations of the Bureau of Internal Revenue involving other types of taxes would be inadmissible, no such evidence actually having been offered and no formal ruling made. The Commissioner is not estopped by his prior determinations.[4]

■ (3) In excluding secondary evidence consisting of the testimony of taxpayer's attorney (Mr. Steffes) as to his recollection of the contents of certain documents, when at the time of the transaction to which the documents pertained, the attorney did not represent any of the parties thereto and the documents themselves were not offered in evidence. They were in existence and could have been procured. Steffes testified that he began to represent the taxpayer in May, 1933 which was after the transfer of the mining properties to the taxpayer had taken place. The only contention raised on this point was by statements of his associate counsel who did not testify, but who contended that Steffes was familiar with the documents pertaining to the transfer and had redrafted some of them.[5]

■ (4) In excluding the offer of taxpayer's accountant (Sandrich) to bring in and place in evidence all of the accountant's working papers in the audit he had made, in lieu of taxpayer's books and records, when the accountant had been engaged and made the audit several years after the transactions involved had occurred. The papers constituting the audit record were not in the court room, no offer was made to select particular papers relevant to the issue before the Tax Court, and taxpayer's original books and records were not submitted in evidence. It appears from the record that Mr. Sandrich was not retained by the corporation to make an audit until 1938 and that he did not put the details of his audit into any of the books of accounts. He merely kept his working papers as records of the Company. About the beginning of 1939 the Company did set up a formal system of corporate accounts.[6]

■ (5) In denying the petition for a reopening of the case for the presentation of further evidence upon the issue decided adversely to the taxpayer.[7]

Rehearing rests in the sound discretion of the Tax Court and its ruling is not subject to review except in the case of clear abuse of discretion. As indicated above, the evidence which the court believed should have been submitted by the petitioner, was available, and should have been presented in the original hearing. The petitioner is not entitled to a rehearing to remedy the mistakes of counsel since the taxpayer has had his day in court. Counsel in this case were neither unauthorized nor incompetent. Crane-Johnson Co. v. Commissioner, of Internal Revenue, 8 Cir., 105 F.2d 744, affirmed in 311 U.S. 54, 61 S.Ct. 114, 85 L.Ed. 35; e.g. Chatham Phenix National Bank & Trust Co. v. Helvering, 66 App.D.C. 330, 87 F.2d 547.

Request for remand of the Case to the Tax Court is denied.

The decision of the Tax Court is affirmed.

[3] Tax Court Rule 20; Hobby v. Commissioner of Internal Revenue, 5 Cir., 97 F.2d 731. Also see 9 Mertens, Law of Federal Income Taxation, (1943), § 50.-52.

[4] E. g. Burnet v. Porter, 283 U.S. 230, 51 S.Ct. 416, 75 L.Ed. 996; Tonningsen v. Commissioner of Internal Revenue, 9 Cir., 61 F.2d 199.

[5] 9 Mertens, Law of Federal Income Taxation, (1943), § 50.78; Wigmore, Evidence, 3rd Ed., § 1177 et seq.

[6] E.g. Consolidated Coke Co. v. Commissioner of Internal Revenue, 3 Cir., 70 F. 2d 446; Greengard v. Commissioner of Internal Revenue, 7 Cir., 29 F.2d 502; Chicago Ry. Equipment Co. v. Commissioner, 4 B.T.A. 452; Evergreen Cemetery Ass'n v. Commissioner, 25 B.T.A. 544, 551.

[7] E. g. Bankers Pocohontas Coal Co. v. Burnet, 287 U.S. 308, 53 S.Ct. 150, 77 L. Ed. 325; Hughes v. Commissioner of Internal Revenue, 9 Cir., 104 F.2d 144; Scott v. Commissioner of Internal Revenue, 8 Cir., 117 F.2d 36; O'Rear v. Commissioner of Internal Revenue, 6 Cir., 80 F.2d 473. Also see 9 Mertens, Law of Federal Income Taxation (1943), § 5095.