ESTATE of David J. LEVENSON, Deceased, Robert L. Levenson, Donald W. Levenson, Edgar Leo Levenson and Fidelity Trust Company, Executors, Petitioners-Appellants

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 13142.

United States Court of Appeals Third Circuit.

Argued June 6, 1960.

Decided Sept. 28, 1960.

Jay T. McCamic, Wheeling, W. Va., for appellants.

Karl Schmeidler, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Louise Foster, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before BIGGS, Chief Judge, and HASTIE and FORMAN, Circuit Judges.

FORMAN, Circuit Judge.

This case involves a petition filed by the executors of the Estate of David J. Levenson, Deceased, to review the decision of the Tax Court of the United States placing for estate tax purposes a valuation of $900 per share upon the 155 shares of stock in Retail Furniture Stores, Inc., owned by David J. Levenson on the date of his death, April 2, 1953. Jurisdiction is conferred on this court by Section 7482 of the Internal Revenue Code of 1954.

Retail Furniture Stores, Inc., hereinafter referred to as Retail, is a West Virginia corporation organized in 1936 and has its business office in Wheeling, West Virginia. Its only activity is the holding of stock in Reichart Furniture Company, hereinafter referred to as Reichart (W. Va.).

The capital stock of Retail consisted of 2400 authorized and outstanding shares with a par value of $25 at the decedent's death. It has not been listed or traded on any stock exchange and there were no sales of this stock on the day the decedent died, since then, or for five years prior thereto.

At the time of the decedent's death he was president of Retail; his son, Robert, was vice-president; and his son, Donald, was treasurer.

The decedent's wife and three sons owned, in the aggregate, 1475 shares of Retail on April 2, 1953. In addition relatives of decedent's wife owned 406 shares on that day. The remaining 364 shares, exclusive of those owned by the decedent, were owned by the daughter of a friend of the decedent.

On April 2, 1953, Retail owned 600 shares of the capital stock of Reichart (W. Va.), which was a West Virginia corporation organized by the decedent about 1920 and engaged in the retail installment sale of furniture and household appliances through stores located at Wheeling, West Virginia, and Washington, Pennsylvania. Its authorized capital stock on April 2, 1953, consisted of 1500 shares with a par value of $100 per share, of which 800 were outstanding and 200 were held in the treasury. The 200 shares outstanding which were not owned by Retail were divided equally among parties not related to the decedent. The decedent was not an officer of Reichart (W. Va.), but his sons, Robert, Edgar and Donald, were president,

vice-president and treasurer, respectively.

On April 2, 1953, Reichart (W. Va.) owned all of the authorized capital stock of Reichart's, Inc., which consisted of 250 shares with a par value of $100 per share; all of the authorized capital stock of the Bertschy Furniture Company, which consisted of 500 shares with a par value of $50 per share; and 60 per cent of the shares of Reichart Furniture Company, hereinafter called Reichart (Ohio), which had an authorized capital stock of 500 shares, with a par value of $100 per share, only 350 of which were outstanding. Reichart (W. Va.) owned 210 shares and a relative of the decedent's wife owned 140 shares. The last three companies referred to were engaged in the retail installment sale of furniture, with Reichart's, Inc. located at Martins Ferry, Ohio, Bertschy at Wheeling, West Virginia and Reichart (Ohio) at Youngstown, Ohio.

The decedent had been engaged in the retail furniture business for many years prior to his death. He was well known in the industry and his advice was widely sought. Prior to his becoming ill in January 1953, he had been active in the operation and supervision of the business. The decedent, his sons and the branch managers of the various stores attended the furniture markets where merchandise was purchased by the decedent's sons and the branch managers after they had consulted and discussed the matter with the decedent.

The business employed about 300 people at the time of the decedent's death. Each retail store had a branch manager and their salaries ranged from $6,000 to $15,000 per year. The decedent's sons who each owned 240 shares of Retail were actively engaged in the business at the time of the decedent's death and they each held offices in the various companies involved here.

As part of its findings of fact the Tax Court set out the balance sheet of Retail as of April 2, 1953. It showed that Retail's principal assets consisted of $18,289.41 in cash, notes valued at $79,675.-

85 and the stock of Reichart (W. Va.) valued at $100,000, its cost when acquired in 1936. It had earned surplus, paid in surplus, and capital surplus totaling $138,399 and capital stock valued at $60,000.

Also included in the Tax Court's findings of fact were the balance sheets on December 31, 1952 of Reichart (W. Va.), Bertschy, Reichart's, Inc., and Reichart (Ohio). From these balance sheets the Tax Court made a chart covering the four companies and showing (1) their working capital, i. e., current assets in excess of current liabilities; (2) ratios of current assets to current liabilities; (3) excess of working capital over operating expenses for 1952; (4) total net worth and net worth per share; (5) in relation to Reichart (W. Va.) its net worth exclusive of its investment in the three subsidiaries included here, and (6) the latter company's rate of return on total assets.

The Tax Court also charted the earnings after taxes of Reichart (W. Va.), Bertschy and 60 per cent of the earnings after taxes of Reichart (Ohio), for the years 1943 to 1952, inclusive, and the earnings of Reichart's, Inc., from its formation in 1948 through 1952.

The Tax Court likewise constructed from exhibits in evidence a dividend chart which showed that Reichart (W. Va.) had received in the years of 1943 through 1952 a total of $311,523 in dividends from its holdings and that it paid out a total of $860,000, or a sum of $1,075 per share for the ten year period.

The Tax Court noted the opinion evidence of Donald Levenson, the decedent's son and an officer of Retail and Reichart (W. Va.) and William Copes, vice president of and head of the tax department of a Pittsburgh bank, as to the value of the stock. Donald Levenson estimated the value of the stock at $252.85 per share, while Mr. Copes's opinion of its value was $250 per share. In the estate tax report, Retail was valued at $250 per share. The Tax Court conceded that the testimony of Messrs. Levenson and

Copes was not without probative value but stated that the record was "replete with substantial stipulated evidence tending to establish the value of the stock", and that its ultimate finding of fact—the evaluation—was based upon a consideration of the entire record.

In utilizing as a factor for the determination of the value of a share of Retail the method of capitalizing annual earnings the Tax Court declined to accept the period used by the Commissioner of the five years 1948 through 1952 to ascertain average annual earnings. It felt that this five year period might be

"subject to the objection that it reflects an undue increase in earnings by reason of the impetus given retail sales, particularly in the appliance field, by the Korean war."

The Tax Court went on to state:

" * * * A ten-year period of 1943 through 1952 would tend to compensate for the Korean War spurt in sales by the leaven of World War II restrictions which would be reflected in the furniture and appliance businesses.

"A computed value of one share of Reichart (W. Va.) stock held by Retail on the above basis is $1,038 to which the addition of $41 per share of quick assets makes a total value per share of $1,079. Other factors, such as the strong family control, lead us to believe that this is too high. Upon a full consideration of the entire record we have concluded that the value for purposes of the estate tax of one share of Retail stock has been found by us to be $900, or $139,500 for the 155 shares. * * * "

However, it is apparent that the Tax Court inadvertently made the same computation as the Commissioner using the same five years to arrive at the same valuation of $1,038.[1] Had it made its computation according to its own conclusion that ten years was the period which would lead to a more equitable average of annual earnings it would have arrived at $877.[2]

The Commissioner argues that a justification of the Tax Court's computation may be made by recognizing the Tax

___

1. The five year total of the earnings of the four operating companies on an accrual basis but after income taxes is $1,966,746. From this figure was deducted the sum of $185,208 which represents the dividends paid to Reichart (W. Va.) by Bertschy and Reichart (Ohio). Reichart, Inc. has never paid any dividends. The result is the sum of $1,781,538. Dividing this figure by 5 gives the sum of $356,307 for the average yearly earnings. When $356,307 is divided by 800 (total outstanding shares of Reichart [W. Va.]) the result is $445 average earnings per share of Reichart (W. Va.). Capitalizing $445 at a rate of 11 per cent or 9⅓ leads to the value of $4,153, for the value of one share of Reichart. Multiplying $4,153 by 600 (the number of shares of Reichart owned by Retail) results in $2,491,800 as the value of the Reichart (W. Va.) stock held by Retail. Dividing $2,491,800 by 2400 (the number of outstanding shares of Retail) results in the sum of $1,038 for the computed value of one share of Reichart (W. Va.) stock held by Retail. The 9⅓ rate used above was that utilized by the Tax Court.

2. The ten year total accrual earnings (after taxes) of the four operating companies is $3,321,690. Deducting $311,523, the dividends paid to Reichart (W. Va.) by Bertschy and Reichart's (Ohio) leaves a total of $3,010,167 (the Commissioner's figure is $15 more). Dividing this number by 10 results in $301,016 for the yearly average earnings. Dividing $301,016 by 800 (the number of outstanding shares of Reichart) results in $376 for the yearly average earnings of Reichart (W. Va.). Multiplying $376 by 9⅓ gives a product of $3,509 as the value of each share of Reichart (W. Va.). Multiplying $3,509 by 600 (the number of shares of Reichart [W. Va.] held by Retail) gives $2,105,400 as the value of Reichart (W. Va.) stock held by Retail. When $2,105,400 is divided by 2400 (the number of outstanding shares of Retail) the result is $877 as the value of one share of Reichart (W. Va.) attributable to each share of Retail.

Court's error and accepting $877 as the correct computation, to which he would add the sum of $41 for the quick assets. This would give a total of $918 from which the Commissioner would allocate $18 to cover the "[o]ther factors, such as strong family control". This hardly relieves the dilemma for the Tax Court definitely assessed those factors at the precise sum of $179 and it may well be that in the face of the calculation of $918 it may still desire to deduct the sum of $179 to cover the "other factors" leaving the value of each share of Retail at $739. Thus we are left with no other course than to remand the case to the Tax Court for a clarification of the issue.

Although we find it necessary to remand the case we shall consider several other objections made by the petitioners.

■ It is argued that the Tax Court ignored a comparison with Leath & Company, a corporation listed on an exchange allegedly in the same or similar line of business. Rev.Rul. 54–77, § 4, CB 1954–1, 187 contains the following language:

> "(h) The Revenue Act of 1943 amended the Internal Revenue Code by adding subsection (k) of section 811, which states, in effect, that in valuing unlisted stocks or securities the value of listed stocks or securities of corporations engaged in the same or similar line of business should be taken into consideration. In selecting a corporation for comparative purposes care should be taken to use only comparable companies. For illustration, a corporation having one or more issues of preferred stock, bonds or debentures in addition to its common stock should not be considered comparable to one having only common stock outstanding. * * *"

Moody's "Manual of Investments" submitted in evidence by the petitioners in the Tax Court reveals Leath & Company to have issued preferred stock. Retail does not have any preferred stock. Thus it would appear that Leath & Company is not acceptable as a comparable corporation.

■ The petitioners contend that the Tax Court committed error in not accepting the opinion testimony given by its experts. It is well settled that the Tax Court is not bound to accept expert testimony where there is substantial evidence to support its decision.[3] Whether there is substantial evidence here we do not now decide.

The petitioners point out that some of the figures taken by the Tax Court from Moody's "Manual of Investments" for 1958 on home furnishing sales for the years 1948 through 1957 are incorrect. They are right. The Tax Court's figures for 1948, in millions, is $6,194, whereas the correct figure is $6,914, and in 1954 the correct figure is, in millions, $9,079, rather than $9,679. In 1951 Moody's established new standards. Under the old standard the correct figure for 1951 is, in millions, $8,083, whereas under the new standard the figure is, in millions, $8,604. The Tax Court took no note of the change. Its significance lies in the fact that under the old standard there was a drop in sales from 1950 to 1951, whereas under the new standard there was a rise in sales. What significance, if any, these corrected figures will have on the Tax Court's ultimate finding is, in the first instance, for it to decide.

The petitioners assert that the Tax Court did not take into account the partial ownership of Reichart (Ohio) by Reichart (W. Va.) in compiling its chart showing the working capital, current assets and current liability ratios, excess of working capital over operating expenses for 1952, and net worth per share. There was no error here for the purpose of the chart is merely to show the financial strength of the companies.

3. Kline v. Commissioner, 3 Cir., 1942, 130 F.2d 742; Fitts' Estate v. Commissioner, 8 Cir., 1956, 237 F.2d 729; Gamble v. Commissioner, 6 Cir., 1939, 101 F.2d 565.

The Tax Court in applying a capitalization rate of 11 per cent or 9⅓ times earnings stated:

"Another acceptable factor to be considered in establishing the value of such stock as that of Retail is the capitalization of earnings. In this, there is a partial realm of agreement between the parties. *They both appear to regard this as 'the most equitable method of computing the valuation' and accept a capitalization of 11 per cent or 9⅓ earnings.* The capitalization of earnings must be just that, and here it can only be accomplished by reference to the earnings of the operating companies." (Emphasis supplied.)

It is true that petitioners' expert, Mr. Copes, testified at one point:

" * * * As to the book value of this corporation, the Retail Stores Furniture, Inc., the book value is $82.49 as of the date of death of Mr. Levenson. Of course, the earnings, as I would imagine, would be the most equitable method of computing the valuation of any security for either estate, loan, or any other purpose. * * * "

Later on Mr. Copes stated:

" * * * In the retail furniture stores, the holding corporations, the average income over a period of ten years is approximately $36.25 per share. However, during this last period of ten years some of the assets of the Retail Furniture Stores have been sold, and I believe that the average earnings, eliminating these assets which have been disposed of, would be approximately $30 a share.

"I assume that nine and a third times your earnings would be a proper valuation."

Hence it would appear that while Mr. Copes agreed that earnings "would be the most equitable method of computing the valuation of any security" he confined his opinion as to a capitalization of 9⅓ times earnings to those of Retail, which he estimated at $30 a share. It cannot be said that he or the petitioners acquiesced in the application of that formula to the earnings of the operating companies.

No standard tables of capitalization rates applicable to closely held corporations can be formulated [4] and we do not now decide whether the application of a capitalization rate of 11 per cent or 9⅓ times earnings could not have substantial evidence to support it. However, primary consideration is generally given to earnings in valuing operating companies while the greatest weight is given to the consideration of assets in valuing securities underlying the holding type of company.[5] Without implying that there should be any change in the rate of capitalization, since we find it necessary to remand we suggest a review of the evidence supporting the capitalization rate of 9⅓ times earnings in the light of the above comment.

As to the other issues raised by the petitioners, we do not now decide them for their resolution may depend on the final valuation as found by the Tax Court.

Accordingly the case will be remanded for reconsideration consistent with this opinion.

4. Rev.Rul. 54–77, § 6, CB 1954–1, 187; see Kline v. Commissioner, supra, note 3.

5. Rev.Rul. 54–77, § 5, CB 1954–1, 187.